[Civ. No. 5713.   Third Appellate District.—November 24, 1937.]

JOSEPH A. BRODERICK, as Superintendent of Banks, etc., Respondent, v. ARTHUR L. KUNDE et al., Appellants.

R. M. Quackenbush for Appellants.

John L. Fleming and Henry G. Bodkin, as *Amici Curiae* on Behalf of Appellants.

Dockweiler & Dockweiler for Respondent.

Clock, McWhinney & Clock and Sullivan, Roche & Johnson, as *Amici Curiae* on Behalf of Respondent.

PULLEN, P. J.—Although having had the benefit of extended oral argument and able briefs presented by *amici curiae* upon rehearing of the above matter, we adhere to our

original opinion. Further study has cast some doubt in our minds as to whether or not section 359 of the Code of Civil Procedure should govern or whether that section under the circumstances here involved has not been superseded by the appropriate provisions of the California Bank Act, but inasmuch as counsel for both sides here have assumed that the Code of Civil Procedure governs and have tried the case and prepared their briefs upon that theory, we will not attempt to pass upon the question as to whether the Bank Act or section 359 of the Code of Civil Procedure applies, but shall assume the code is controlling.

It is also urged upon us that it was not necessary to determine in this case whether the liability was created when the assessment was levied or when the assessment remained unpaid after the date fixed for payment, but in order to determine whether or not the action was barred it was necessary to fix the date upon which the period of limitation actually commenced to run. We believe therefore that it was within the legitimate scope of our inquiry to distinguish between the accrual of the cause of action and the creation of the liability.

We therefore readopt the original opinion heretofore filed in this matter on June 10, 1937, with certain corrections, as follows:

Defendants, residents of California, were stockholders in the Bank of the United States, a banking corporation organized under the banking laws of the state of New York, having its principal place of business in that state.

On the 11th day of December, 1930, plaintiff as superintendent of banks, finding this bank unable financially to continue its business, took possession pursuant to the provisions of the banking law (sec. 57) of the state of New York, and since December 11, 1930, has been engaged in liquidation of said bank. After determining that the assets of the bank were not sufficient to pay its creditors in full, plaintiff, on July 6, 1932, as such superintendent of banks, pursuant to the provisions of the banking law, determined an assessment of $25 per share was required from each stockholder for each share of stock so held to pay said claims and required that the assessment be paid on or before the 8th day of August, 1932. Defendants, as stockholders, were duly notified of said assessment but failed to pay the same, whereupon this action was

commenced. Judgment was rendered against them, from which this appeal is taken.

Both parties here agree that the sole question on this appeal is the application of section 359 of the Code of Civil Procedure as a statute of limitations to the facts at issue, and the question presents a two-fold aspect, viz.: When did the three-year limitation declared in said section begin to run on the liability sued on? and, Has the action been barred by the running of the limitation fixed in said section?

Section 359 of the Code of Civil Procedure provides:

"This title does not affect actions against directors or stockholders of a corporation, to recover a penalty or forfeiture imposed, or to enforce a liability created by law; but such actions must be brought within three years after the discovery by the aggrieved party of the facts upon which the penalty or foreclosure attached, or the liability was created."

Respondent admits that this section controls any action filed in California predicated upon the New York banking law and that such action "must be brought within three years . . . after the liability was created", but contends that the liability here is for and upon the unpaid assessment, and that this is an action for the amount of such assessment. The liability, according to respondent, was created when and only when it was levied and a date fixed for the payment, which was August 8, 1932, and that this action having been filed December 8, 1933, was commenced in ample time. Section 80 of the New York Banking Law (Laws 1914, c. 369, Consol. Laws, c. 2) provides:

" . . . In case any such stockholder shall fail or neglect to pay such assessment", (the stockholder's double liability assessment levied by the Superintendent of Banks) "within the time fixed in said notice, the superintendent shall have a cause of action, in his own name as superintendent of banks, against such stockholder . . . for the amount of such unpaid assessment . . . , together with interest thereon from the date when such assessment was, by the terms of said notice, due and payable."

Defendant relies upon the distinction between the accrual of a cause of action and the creation of the liability, but from our view of the matter we agree with plaintiff that here the accrual of the cause of action for, and the creation of the liability with respect to, the assessment are concurrent, both

having arisen on August 8, 1932, that being the date fixed by the superintendent of banks for the payment of the assessment. The Banking Law (*supra*) provides, "the superintendent shall have a cause of action . . . against such stockholder . . . for the amount of such unpaid assessment". This provision has the effect of creating in the superintendent a property right in and to the assessment, and imposes upon the stockholder a corresponding obligation to pay the same.

In *Frost* v. *Witter*, 132 Cal. 421 [64 Pac. 705, 84 Am. St. Rep. 53], the court, considering "action" and "cause of action", has this to say:

" . . . Some confusion has resulted from the neglect to define the terms, 'cause of action' and 'action'. . . .

"The latter term is very commonly confounded with the suit (*litis*) in which the action is enforced. But this is not the technical meaning of the term. . . . 'An action is nothing else than the right or power of prosecuting in judicial proceeding what is owed to one,'—which is but to say, an obligation. . . . The action, therefore, springs from the obligation, and hence the 'cause of action' is simply the obligation. This is in accordance with the view of Mr. Pomeroy. . . .

"The 'cause of action' is therefore to be distinguished, also, from the 'remedy',—which is simply the means by which the obligation or the corresponding action is effectuated,—and also from the 'relief' sought. . . . "

Appellant cites a number of California cases, some of which, however, arose under the now superseded liability of stockholders, which made each stockholder liable for his appropriate part of the debts incurred during the time he was a stockholder. Two cases, however, are cited which deal particularly with the provisions of bank stockholder's liability laws in jurisdictions outside of California. In the case of *Smith* v. *Shepler*, 8 Cal. App. (2d) 17 [48 Pac. (2d) 999], plaintiff, as liquidator, sought and obtained a judgment against defendant stockholder based upon ownership of certain shares in a Florida state bank. That case, however, deals principally with the methods of procedure and provides that the foreign plaintiff must follow the California law and is subject to our period of limitations regardless of the period of similar limitations under the jurisdiction of Florida.

The other case upon which appellant strongly relies is *Royal Trust Co.* v. *MacBean*, 168 Cal. 642 [144 Pac. 139].

That case involves the application of the Canadian Banking Law.   That law provides that

"the amount which he (the shareholder) is liable to contribute (to pay the bank's debts) shall be deemed an asset of the company, and a debt due to the company (bank), payable as directed or appointed under this act (Canadian Winding-Up Act)''.

This act further provides that "the liability of any person to contribute to the assets of a company under this act, in the event of the business of the same being wound up, shall create a debt accruing due from such person at the time when his liability commenced, but payable at the respective times when calls are made as hereinafter provided, for enforcing such liability.''

Considering this provision the court held that "the commencement of the liability must be taken to be the time when, under the act of incorporation (the bank act) not exceeding the par value of his shares of stock, and not exceeding his equal and ratable proportion, he will pay, at such times and in such amounts as the comptroller of the currency shall decide to be necessary and shall demand, the debts and obligations of his bank, Rev. St., sections 5151, 5234; *Kennedy* v. *Gibson*, 8 Wall. 498 [19 L. Ed. 476].

"The statute of limitations does not commence to run against the enforcement of any particular portion of it until the comptroller of the currency had called the entire liability or the particular part of it in issue,'' citing many federal cases.   See, also, *Johnson* v. *Greene*, (1936) 14 Fed. Supp. 945.

The courts of New York have considered this question, and in the following two cases has considered these provisions in connection with the liquidation of the very bank here involved: *Broderick as Superintendent of Banks, etc.*, v. *Aaron et al.*, (1934) 151 Misc. 516 [272 N. Y. Supp. 219], and *Broderick as Superintendent of Banks, etc.*, v. *Adamson et al.*, (1933) 148 Misc. 353 [265 N. Y. Supp. 804]).

In *Broderick* v. *Aaron et al., supra*, the court there said: "Under this statute the assessment becomes 'due and payable' after the determination by the superintendent to assess and upon the maturity of the demand for its payment, and the right or cause of action to enforce the assessment accrues at that time.

"This is the rule of the federal courts in actions to enforce the statutory liability of stockholders of national banks." (Citing authorities.)

We are of the opinion, therefore, the judgment should be affirmed, and it is so ordered.

Thompson, J., and Plummer, J., concurred.